**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
PECOS DIVISION**

| | | |
|---|---|---|
| **MICHAEL LEMONS,**<br>　　*Plaintiff,* | § <br> § <br> § <br> § <br> § | |
| **v.** | § <br> § | **PE:22-CV-00002-DC** |
| **APACHE CORPORATION, ALTUS<br>MIDSTREAM CO.,**<br>　　*Defendants.* | § <br> § <br> § <br> § | |

**ORDER**

Litigation can be a lot like tennis. For example, Plaintiff Michael Lemons started the match by suing Apache Corporation and Altus Midstream Co. ("Defendants") for various claims under the Americans with Disabilities Act ("ADA") and the Family and Medical Leave Act ("FMLA"). Defendants returned serve, and the rally commenced. Defendants have started the next rally by filing the Motion for Summary Judgment now before the Court. The problem, however, is that Lemons did not return Defendants' serve. So although Defendants' serve must still be "in," Defendants are now playing against no defense.

**BACKGROUND**

The facts are not complicated. Defendants hired Lemons in May 2018 as a non-exempt senior technician. And until January 2021, Lemons had no problem performing his job duties with no prior discipline issues. That same month, however, Lemons' supervisor noted discrepancies in Lemons' timesheets. Lemons' supervisor responded by having a face-to-face meeting with Lemons and set expectations for how Lemons should report his time moving forward.

Around the same time, Lemons began experiencing symptoms like shortness of breath and swollen lower extremities. Lemons' cariologist recommended heart surgery, so on April 6, 2021—around a week before his scheduled surgery—Lemons notified his supervisor about his need to take FMLA leave. Defendants' Human Resources (HR) department processed and approved the request in 24 hours.

After a successful surgery, Lemons was scheduled to return to work on July 1. And only a few weeks before his return date, Lemons' doctor gave him a release to return to work with no restrictions or limitations. Yet a little over a week after Lemons returned to work, his supervisor noted more discrepancies between the time that Lemons reported that he was on the jobsite and the actual time Lemons was there.

So Lemons' supervisor emailed Defendants' HR department the next week, outlining the history of recordkeeping discrepancies, concluding that Lemons was falsifying his time sheets. Because falsifying time records violates Defendants' Code of Business Conduct, Defendants terminated Lemons' employment on July 14, 2021 ("Termination Date"). Lemons sued Defendants in January 2022.

## LEGAL STANDARD

Summary judgment's purpose is to isolate and dispose of factually unsupported claims or defenses.[1] Summary judgment is proper under Rule 56(a) of the Federal Rules of Civil Procedure "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." A dispute about a material fact is genuine when "the evidence is such that a reasonable jury could return a verdict for the

---

[1] *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986).

nonmoving party."[2] Substantive law identifies which facts are material.[3] The trial court "must resolve all reasonable doubts in favor of the party opposing the motion for summary judgment."[4]

The party seeking summary judgment bears the initial burden of informing the court of its motion and identifying "depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials" that establish the absence of a genuine issue of material fact.[5] If the movant bears the burden of proof on a claim or defense for which it is moving for summary judgment, it must come forward with evidence that establishes "beyond peradventure *all* of the essential elements of the claim or defense."[6] While the nonmovant bears the burden of proof, the movant may discharge the burden by showing that no evidence supports the nonmovant's case.[7]

Once the movant has carried its burden, the nonmovant must "respond to the motion for summary judgment by setting forth particular facts indicating there is a genuine issue for trial."[8] Yet here, Plaintiff did not respond. As a result, the Court treats Defendants' motion as unopposed.

Unopposed motions for summary judgment, however, do not receive a rubber-stamped ruling. Indeed, the Fifth Circuit has long held that a court cannot grant a motion

---

[2] *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 248 (1986).
[3] *Id.*
[4] *Casey Enters., Inc. v. Am. Hardware Mut. Ins. Co.*, 655 F.2d 598, 602 (5th Cir. 1981).
[5] Fed. R. Civ. P. 56(c)(1)(A); *Celotex*, 477 U.S. at 323.
[6] *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir. 1986).
[7] *Celotex*, 477 U.S. at 325; *Byers v. Dall. Morning News, Inc.*, 209 F.3d 419, 424 (5th Cir. 2000).
[8] *Byers*, 209 F.3d at 424 (citing *Anderson*, 477 U.S. at 248–49).

for summary judgment "simply because there is no opposition."[9] The movant must still establish the absence of a genuine issue of material fact. And if the movant fails to do so, "the court may not grant the motion, regardless of whether any response was filed."[10] Thus, the Court will analyze the merits of Defendants' motion.

## DISCUSSION

Lemons makes three claims. First, he argues that his conditions were the motivating factor in Defendants' termination decision and thus constituted disability discrimination in violation of the ADA and its Texas equivalent ("TCHRA").[11] Second, Lemons claims that by terminating him, Defendants violated the FMLA by not restoring him to his previous employment position. Lastly, Lemons claims his termination was in retaliation for him taking FMLA leave. The Court starts with Lemons' disability discrimination claim.

## I.      Lemons' disability discrimination claim.

The Fifth Circuit has instructed courts to analyze claims under the ADA and the TCHRA the same way because such claims are alike.[12] Indeed, the TCHRA "parallels the language of the ADA."[13] Thus, unless noted otherwise, the Court analyzes both claims together.

To prove their discrimination claim, a plaintiff can either provide direct evidence they were discriminated against because of their disability or use the burden shifting analysis

---

[9] *Hibernia Nat. Bank v. Administracion Cent. Sociedad Anonima*, 776 F.2d 1277, 1279 (5th Cir. 1985).
[10] *Id.*
[11] 42 U.S.C. § 12112(a); Tex. Labor Code Ann. § 21.051.
[12] *Pegram v. Honeywell, Inc.*, 361 F.3d 272, 285–87 (5th Cir. 2004).
[13] *Id.*

enumerated by the Supreme Court in in *McDonnell Douglas Corp. v. Green*.[14] The burden shift-ing analysis requires the plaintiff establish a prima facie discrimination case before the bur-den is shifted to the defendant.[15] Here, there is no direct evidence, so the Court moves to *McDonnell*'s burden-shifting analysis.

As outlined by the Fifth Circuit, a plaintiff can establish a prima facie disability dis-crimination claim by proving they (1) had a disability, (2) were qualified for the job, and (3) suffered an adverse employment decision because of their disability.[16] If the plaintiff estab-lishes this discrimination presumption, the burden shifts to the defendant to show a "legiti-mate, nondiscriminatory reason" for terminating the plaintiff.[17] And if the defendant does so, the burden shifts back to the plaintiff to prove the defendant's reasons were merely pre-textual.[18]

To satisfy the first element, Lemons must show that (1) his condition was a "disabil-ity," and (2) he had that disability when Apache terminated his employment.[19] The ADA and the TCHRA define "disability" as "a mental or physical impairment [which] must substan-tially limit an individual's ability to perform at least one major life activity."[20] Here, Lemons summarized his condition as "coronary artery disease" and testified in his deposition that he had shortness of breath and swelling in his knees and ankles.[21]

---

[14] *E.E.O.C. v. LHC Grp., Inc.*, 773 F.3d 688, 694 (5th Cir. 2014) (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).
[15] There is no evidence to suggest Lemons has provided direct evidence he was discriminated against, only circumstantial.
[16] *Id.* at 697.
[17] *E.E.O.C. v. Chevron Phillips Chem. Co.*, 570 F.3d 606, 615 (5th Cir.2009).
[18] *Id.*
[19] *Id.* at 618.
[20] *Waldrip v. General Elec. Co.*, 325 F.3d 652, 655 (5th Cir. 2003)
[21] Doc. 36 at 10.

But the Court need not answer whether Lemons' conditions qualify as a "disability" because Defendants supplied substantial evidence that Lemons wasn't "disabled" on the Termination Date. For example, Lemons' heart doctor released him to work—without restriction—a full month before the Termination Date.[22] And in May, one month after surgery—and two months before the Termination Date—Lemons informed his doctor that his conditions were receding.[23] So even if Lemons' conditions qualified as a disability at some point,  Defendants have established that there is no evidence that such conditions were present on the Termination Date. Accordingly, the burden shifts to Lemons.

Yet Lemons did not respond to Defendants' motion. And without a response "setting forth particular facts indicating there is a genuine issue for trial," Defendants' evidence stands alone in the record.[24] And standing alone, Defendants have established an "absence of a genuine issue of material fact" and are entitled to summary judgment on Lemons' disability discrimination claim.[25]

## II.    Lemons' Family and Medical Leave Act claims.

Under the FMLA, "an eligible employee" can take up to twelve weeks of annual unpaid leave for "a serious health condition" that prevents them from performing their duties.[26] And when the employee returns from leave, the employer must restore the employee "to the position of employment held by the employee when the leave commenced," or "to

---

[22] Doc. 36, Ex. A at 27.

[23] *Id.*, Ex. A at 25.

[24] *Byers*, 209 F.3d at 424 (citing *Anderson*, 477 U.S. at 248–49).

[25] *See Hibernia Nat. Bank v. Administracion Cent. Sociedad Anonima*, 776 F.2d 1277, 1279 (5th Cir. 1985).

[26] 29 U.S.C. § 2612(a)(1)(D).

an equivalent position with equivalent employment benefits, pay, and other terms and conditions of employment."[27]

The FMLA prohibits employers from interfering with an employee's rights under the FMLA (an interference claim) or discharging an employee in retaliation for exercising their FMLA rights (a retaliation claim).[28] Here, Lemons makes both claims.

### A. Lemons' Interference Claim.

To prove his failure to restore (interference) claim, Lemons must show that Defendants interfered with his rights under the FMLA. These rights include the right to take FMLA leave and the right to be "restored" to the same or equivalent position on return from leave. But as Defendants point out, Lemons cannot pursue both an interference and a retaliation claim if they are duplicative of one another.[29] In other words, Lemons can't double-dip if the substance of both claims relate to being terminated for exercising his FMLA leave. Such is the case here.

Nowhere does Lemons claim he was kept from taking FMLA leave in the first place. In fact, Defendants processed and approved Lemons' leave request in 24 hours and even visited Lemons while he was still in the hospital after surgery. And although he was fired after only two weeks back, Lemons had returned to the same position he left three months earlier.[30] So Lemons' interference claim is substantively the same as his retaliation claim—Defendants wrongfully fired him. Thus, Lemons' interference claim is duplicative, and De-

---

[27] § 2614(a)(1).
[28] § 2615(a)(1)–(2).
[29] *See, e.g.*, *Kibbie v. Hays Consol. Indep. Sch. Dist.*, No. A-19-CV-393-SH, 2020 WL 1695688, *6 (W.D. Tex. Apr. 7, 2020) (Hightower, M.J.).
[30] Doc. 36 at 7.

fendants are entitled to summary judgment on Lemons' failure to restore (interference) claim.

### B. Lemons' Retaliation Claim

Lemons' only FMLA claim left then, is the retaliation claim. Like his ADA claim above, Lemons must first establish a prima facie case for retaliation before the burden shifts to Defendants.[31] To do so, Lemons must show (1) he was protected under the FMLA and (2) suffered an adverse employment decision.[32] Lemons must also establish either that (a) he was treated less favorably than an employee who had not requested FMLA leave or (b) Defendants terminated him because of his request for leave.[33]

Yet it is difficult for Lemons to meet his burden when he fails to respond. And even if the Court could shift the burden to Defendants, the record lacks the facts necessary to create a genuine issue of material fact. Indeed, the evidence shows Defendants terminated Lemons for submitting false time sheets, bolstered by Defendants' termination of another employee for the same reason only a year earlier.[34] Without conflicting facts in the record, Defendants are entitled to summary judgment on Lemons' FMLA retaliation claim.

### III.    Lemons' request for damages.

Lemons has no claims left. So he has no foundation from which he could build his request for various damages. Thus, Defendants are entitled to summary judgment on Lemons' request for damages.

---

[31] *Tatum v. S. Co. Servs., Inc.*, 930 F.3d 709, 713 (5th Cir. 2019).
[32] *Bocalbos v. Nat'l W. Life Ins. Co.*, 162 F.3d 379, 383 (5th Cir. 1998).
[33] *Id.*
[34] Doc. 36 at 7, 16.

## CONCLUSION

Unopposed motions for summary judgment do not equal a rubber-stamp victory for the movant. But when the nonmovant fails to respond, it allows the movant to play the match, continuing the tennis analogy, without an opponent. In short, Defendants met their burden—they established the absence of a genuine issue of material fact. Lemons never returned serve, giving Defendants' an ace. As a result, the Court grants Defendants' motion.

It is therefore **ORDERED** that Defendants' Motion for Summary Judgment be **GRANTED**. (Doc. 36).

It is so **ORDERED**.

SIGNED this 21st day of October, 2022.

DAVID COUNTS
UNITED STATES DISTRICT JUDGE